**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MEGAN WONG; NOELLE WONG;
KA'IULANI EDENS; JESSE BROWN-
CLAY; MARCIA SACCO; WENDY
RAEBECK; JEFF SACHER; LEA
TADDONIO; RICHARD COON; ANDREA
BROWER; FABIENNE CHRISTE; KAMEI
TRINQUE; FERN ANUENUE HOLLAND;
JAY H. TAYLOR; STAR NEWLAND;
BARBARA WIEDNER; LEE TEPLEY;
PAUL DOUBLEDAY MASSEY; DAVID
RICHARD MIRELES; MICHIAL
FREIGANG; JONATHAN JAY; CORY
(MARTHA) HARDEN,                          No. 07-16799
              *Plaintiffs-Appellants,*
                                            D.C. No.
            v.                            CV-07-00484-HG

GEORGE W. BUSH, Jr., President of          OPINION
the United States of America and
Commander in Chief, Armed
Forces of the United States;
MICHAEL CHERTOFF, Secretary of
United States Department of
Homeland Security; THAD W.
ALLEN, Commandant United States
Coast Guard; SALLY BRICE-OHARA,
Rear Admiral United States Coast
Guard, Command of the 14th
District,
              *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Hawaii
Helen Gillmor, District Judge, Presiding

12373

Submitted August 12, 2008*
San Francisco, California

Filed September 5, 2008

Before: David R. Thompson and Kim McLane Wardlaw,
Circuit Judges, and Susan R. Bolton,** District Judge.

Opinion by Judge Wardlaw

---

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Susan R. Bolton, United States District Judge for the District of Arizona, sitting by designation.

**COUNSEL**

Lanny Sinkin, Hilo, Hawaii, for the plaintiffs-appellants.

Edward H. Kubo, Jr., United States Attorney, Lawrence L. Tong and Derrick K. Watson, Assistant United States Attorneys, Honolulu, Hawaii, for the defendants-appellees.

## OPINION

WARDLAW, Circuit Judge:

[1] Plaintiff-Appellants ("Appellants"), many of whom participated in protests on August 26 and 27, 2007, oppose the Hawaii Superferry's ("HSF") operation to the Nawiliwili Harbor in Kauai, Hawaii, alleging that it is illegal. Appellants appeal the district court's denial of their motion for declaratory relief, a temporary restraining order, a preliminary injunction, and a permanent injunction. They contend that by establishing a security zone to enable the HSF to dock at Nawiliwili Harbor, the United States Coast Guard violated their First Amendment right to free speech, the National Environmental Policy Act ("NEPA"), and 50 U.S.C. § 191 and 33 C.F.R. § 165.30, which govern the Coast Guard's authority to create security zones safeguarding United States waters and harbors. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). Because the issue presented is "capable of repetition, yet evading review," it is not moot.[1] *See Fed. Election*

---

[1]The Coast Guard rule establishing a security zone in the waters of Nawiliwili Harbor, Kauai, that was challenged by Appellants was in effect from September 1, 2007 to October 31, 2007. *See* Security Zone; Hawaii Super Ferry Arrival/Departure Nawiliwili Harbor, Kauai, HI, 72 Fed. Reg. 50,877 (Sept. 5, 2007) (codified at 33 C.F.R. pt. 165). The Coast Guard reestablished the security zone from November 1, 2007 to November 30, 2007. *See* Security Zone; Nawiliwili Harbor, Kauai, HI, 72 Fed. Reg. 61,518 (Oct. 31, 2007) (codified at 33 C.F.R. pt. 165). No rule establishing a security zone is currently in effect, as the HSF suspended operations to Kauai on August 28, 2007, and has not resumed service. A previous panel of our court has held that, nevertheless, we have jurisdiction over this appeal because the issue is "capable of repetition, yet evading review." *See Wong v. Bush*, No. 07-16799, Order at 1 (9th Cir. Jan. 4, 2008).

*Comm'n v. Wis. Right to Life, Inc.*, 127 S. Ct. 2652, 2662 (2007). We affirm.

> A preliminary injunction is appropriate when a plaintiff demonstrates either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's] favor. These two options represent extremes on a single continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor.

*Lands Council v. McNair*, ___ F.3d ___, 2008 WL 2640001, *3 (9th Cir. July 2, 2008) (en banc) (internal quotation marks and citations omitted).

**[2]** Appellants have standing to assert their claim that the security zone prevents them from exercising their First Amendment right to communicate the view that the operation of the HSF is illegal by blocking its entrance. Contrary to the representation in the government's brief, several Appellants reference the First Amendment in their Complaint. Moreover, the Complaint details the protests of August 26 and 27, 2007, and many Appellants allege their resolve to reenter the water in protest should the HSF return to Kauai. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000) ("It is sufficient for standing purposes that the plaintiff intends to engage in 'a course of conduct arguably affected with a constitutional interest' and that there is a credible threat that the challenged provision will be invoked against the plaintiff." (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979))). There is little doubt, based on the affidavits in the record, that once the HSF resumes operations, the Coast Guard will enforce the security zone, and Appellants' asserted First Amendment rights will be implicated.

**[3]** Although Appellants have standing to assert their claim, we disagree that the rule establishing the security zone violates Appellants' First Amendment rights. Some forms of conduct are protected as symbolic speech, but the Supreme Court has "extended First Amendment protection only to conduct that is inherently expressive." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 126 S.Ct. 1297, 1310 (2006). To the extent Appellants' blockade in protest of the HSF constitutes symbolic speech, the rule establishing the security zone is a reasonable time, place, and manner restriction. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The rule is content-neutral, narrowly tailored to achieve a significant government interest, and leaves open ample alternative channels of communication. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1128-43 (9th Cir. 2005). Alternatively, if Appellants' blockade is conduct that does not constitute symbolic speech, it is not protected by the First Amendment. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) (finding certain conduct unprotected because "[t]he First Amendment does not protect violence.")*; Cox v. Louisiana*, 379 U.S. 536, 554-55 (1965) ("A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations.").

**[4]** Appellants have standing to bring their NEPA claims. Appellants assert that the Coast Guard failed to consider secondary environmental effects before establishing the security zone. As recreational users of Nawiliwili Harbor, Appellants have a concrete interest in ensuring that the Coast Guard conducts the necessary environmental review. *See Nuclear Info. & Res. Serv. v. NRC*, 457 F.3d 941, 949-50 (9th Cir. 2006); *Citizens for Better Forestry v. USDA*, 341 F.3d 961, 969, 971, 976 (9th Cir. 2003); *City of Davis v. Coleman*, 521 F.2d 661, 671 (9th Cir. 1975) ("The procedural injury implicit in agency failure to prepare an [environmental impact statement]—the creation of a risk that serious environmental impacts will be

overlooked—is itself a sufficient 'injury in fact' to support standing, provided this injury is alleged by a plaintiff having a sufficient geographical nexus to the site of the challenged project that he may be expected to suffer whatever environmental consequences the project may have.").

**[5]** Appellants contend the Coast Guard's establishment of the security zone violates NEPA because the Coast Guard did not consider the "no action" alternative required by 40 C.F.R. § 1502.14(d). Consideration of the "no action" alternative is a requirement in the preparation of an environmental impact statement ("EIS"). However, where agency action falls under a categorical exclusion, it need not comply with the requirements for preparation of an EIS. *See* 40 C.F.R. § 1508.4 (2008). The Coast Guard established the security zone pursuant to a categorical exclusion, *see* National Environmental Policy Act: Agency Procedures for Categorical Exclusions, 59 Fed. Reg. 38,654, 38,658 (Sept. 5, 2007), an action that was neither arbitrary nor capricious. *See Alaska Ctr. for the Env't v. United States Forest Serv.*, 189 F.3d 851, 857 (9th Cir. 1999)*.* Accordingly, the Coast Guard need not consider the "no action" alternative when establishing the security zone.

**[6]** Appellants assert the Coast Guard violated NEPA by failing to consider the secondary effects of establishing the security zone, that is, the environmental effects created by the HSF's operation. The rule establishing the security zone and the HSF are not so intertwined as to constitute one federal action, however, and the Coast Guard was not required to consider the secondary environmental effects created by the HSF when it established the security zone. *See Wetlands Action Network v. United States Army Corps of Eng'rs*, 222 F.3d 1105, 1116 (9th Cir. 2000) ("We have upheld an agency's decision to limit the scope of its NEPA review to the activities specifically authorized by the federal action where the private and federal portions of the project could exist independently of each other." (citing *California Trout v. Schaefer*, 58 F.3d 469, 472-75 (9th Cir. 1995) (upholding agency's

decision to limit the scope of its NEPA review to impacts associated with the fill of wetlands rather than considering the impact on downstream fisheries from an entire canal project))); *Enos v. Marsh*, 769 F.2d 1363, 1371-72 (9th Cir. 1985) (upholding agency's decision to exclude from its NEPA analysis the impact of nonfederal shore facilities for a new deep draft harbor).

**[7]** The Coast Guard did not exceed the regulatory authority granted to it in 50 U.S.C. § 191 and 33 C.F.R. § 165.30 when it established the security zone. The President has the authority to establish a security zone "to safeguard against destruction, loss, or injury from sabotage or other subversive acts, accidents, or other causes of similar nature, vessels, harbors, ports, and waterfront facilities in the United States." 50 U.S.C. § 191(b); *see also* 33 C.F.R. § 165.30 (2008). Here, the Coast Guard established the security zone "to better protect people, vessels, and facilities in and around Nawiliwili Harbor in the face of non-compliant protesters who have impeded passage of the Hawaii Super Ferry to its dock in the harbor." Security Zone; Hawaii Super Ferry Arrival/ Departure Nawiliwili Harbor, Kauai, HI, 72 Fed. Reg. 50,877 (Sept. 5, 2007) (codified at 33 C.F.R. pt. 165).

**[8]** Finally, Appellants have not demonstrated that they will be irreparably injured by the Coast Guard's implementation of the security zone.

   **AFFIRMED**.